**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

──────────────────────────────────────────x

MARIO CALDERON, *et al.*,

        Plaintiffs,

    -against-                        20 civ. 1296 (CM)

CLEARVIEW AI, INC., *et al.*,

        Defendants.

──────────────────────────────────────────x

MARIA BROCCOLINO,

        Plaintiff,

    -against-                        20 civ. 2222 (CM)

CLEARVIEW AI, INC.,

        Defendant.

──────────────────────────────────────────x

JOHN MCPHERSON,

        Plaintiff,

    -against-                        20 civ. 3053 (CM)

CLEARVIEW AI, INC., *et al.*

        Defendants.

──────────────────────────────────────────x

SEAN BURKE, *et al.*,

        Plaintiffs,

    -against-                        20 Civ. 3104 (CM)

CLEARVIEW AI, INC. *et al.*,

        Defendants.

─────────────────────────────────────────────x

DEAN JOHN, *et al.*,

    Plaintiffs,

  -against-                                                                           20 Civ. 3481 (CM)

CLEARVIEW AI, INC.,

    Defendant.
─────────────────────────────────────────────x

SHELBY ZELONIS ROBERSON,

    Plaintiff,

  -against-                                                                           20 Civ. 3705 (CM)

CLEARVIEW AI, INC.,

    Defendant.
─────────────────────────────────────────────x

**MEMORANDUM DECISION AND ORDER DENYING THE MOTION TO INTERVENE AND TO DISMISS OR, ALTERNATIVELY, TO STAY CASES OR TRANSFER VENUE**

McMahon, CJ:

    On January 18, 2020, the *New York Times* published an exposé on the company Clearview AI, Inc. ("Clearview"), entitled "The Secretive Company That Might End Privacy as We Know It." The article described Clearview's creation of a facial recognition app "that could end your ability to walk down the street anonymously."[1]

    Since that exposé, eight federal class action lawsuits have been filed against Clearview and its two principals, Hoan Ton-That ("Ton-That") and Richard Schwartz ("Schwartz") (collectively with Clearview, the "Clearview Defendants"). All eight cases were filed within

───────────────────────

[1] Kashmir Hill, *The Secretive Company That Might End Privacy as We Know It*, N.Y. Times (Jan. 18, 2020; updated Feb. 10, 2020), https://www.nyties.com/2020/01/18/technology/clearview-privacy-facial-recognition.html.

2

weeks of each other. Two cases were filed in Chicago, Illinois; one in Alexandria, Virginia; one in San Diego, California; and the rest in this court.

Each case arises out of Defendant Clearview's conduct in: (a) allegedly scraping billions of facial images from the Internet; (b) performing facial scans of those images; and (c) creating a biometric database that allows users of the database to immediately identify a member of the public merely by uploading a person's image to the database.

The Virginia and San Diego cases have already been transferred to this court, so there are now six actions pending in this district. There is a motion to transfer the Chicago cases to this court pending in the Northern District of Illinois. Defendants have not filed an answer in any case and no formal discovery has taken place.

Pursuant to Federal Rule of Civil Procedure 24, David Mutnick – who filed the first federal class action against Clearview, in the Northern District of Illinois – moves to: (a) intervene in the six class action lawsuits that are presently pending before this Court; and (b) to dismiss those cases pursuant to the first-filed rule or, alternatively, stay the cases or have them all transferred to the Northern District of Illinois where Mutnick first filed his case, *Mutnick v. Clearview AI, Inc.*, 1:20-cv-512-SC (N.D. Ill.) ("*Mutnick*"). The cases at issue are: (1) *Calderon v. Clearview AI, Inc.,* 1:20-cv-1296-CM ("*Calderon*"); (2) *Broccolino v. Clearview AI, Inc.*, 1:20-cv-2222-CM ("*Broccolino*"); (3) *McPherson v. Clearview AI, Inc.*, 1:20-cv-3053-CM ("*McPherson*"); (4) *Burke v. Clearview AI, Inc.*, 1:20-cv-3104-CM ("*Burke*"); (5) *John v. Clearview AI, Inc.*, 1:20-cv-3481-CM ("*John*"); and (6) *Roberson v. Clearview AI, Inc.*, 1:20-cv-3705-CM ("*Roberson*").

For the foregoing reasons, Mutnick's Motion to Intervene, whether pursuant to FRCP 24(a) or 24(b), is DENIED. Moreover, had the motion been granted, this Court would have

declined to stay or transfer the six Clearview actions pending here. I intend to consolidate the cases and proceed with case management.

## FACTUAL BACKGROUND

### I. The Clearview Defendants

Clearview is a Delaware corporation with its headquarters and principal place of business in New York. Clearview collects images on the internet and organizes them into a searchable database, which can then be searched on an online app by its licensed users. (Dkt. No. 34, at 4) Clearview hosts its data on servers located in New York and New Jersey. (*Id.*)

Defendants Ton-That and Schwartz are principles of Defendant Clearview and manage technology and sales for the company. Ton-That serves as the company's chief executive officer. Ton-That and Schwartz are both residents of New York. (*Id.* at 5)

### II. Procedural Background

Mutnick filed his lawsuit on January 22, 2020, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), as well as federal constitutional claims under 42 U.S.C. § 1983 (on the theory that Clearview AI qualifies as a state actor). He also asserted a claim for unjust enrichment. The claims are asserted on behalf of a nationwide class and an Illinois subclass. (*Mutnick v. Clearview AI, Inc.*, 1:20-cv-512-SC (N.D. Ill.), Dkt. No. 1.)

Thereafter, several other plaintiffs filed similar, but not identical, putative class actions against the Clearview Defendants.

On February 3, 2020, Plaintiff Roberson filed a complaint in the Eastern District of Virginia, alleging violations of Virginia Code § 8.01-40 and for violations of the Virginia Computer Crimes Act. No federal claims were alleged. The Clearview Defendants filed a motion

to transfer to New York, arguing that the Clearview Defendants were not subject to personal jurisdiction in Virginia and that New York was the proper venue for the lawsuit. (*See Roberson v. Clearview AI, Inc.*, No. 20-cv-111-RDA-MSN (ED. Va.), Dkt. Nos. 12-14.) Notwithstanding the fact that the Virginia Action raised only issues of Virginia law, it was transferred to this Court on May 12, 2020.

On February 5, 2020, Plaintiff Hall filed a second complaint against the Clearview Defendants in the Northern District of Illinois. The complaint alleges violations of BIPA, the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as common law conversion. No federal claims were alleged. (*See Hall v. Clearview AI, Inc.*, No. 20-846 (N.D. Ill.), Dkt. No. 1.)

On February 13, 2020, Plaintiff Calderon filed a complaint in the Southern District of New York alleging violations of BIPA on behalf of a putative Illinois class. No federal claims were alleged. (*See Calderon v. Clearview AI, Inc.,* 1:20-cv-1296-CM.)

On February 27, 2020, Plaintiff Burke filed a complaint in the Southern District of California alleging violations of California's Unfair Competition Law § 17200, violation of California Civil Code § 3344(a), unjust enrichment, and a violation of BIPA on behalf of putative Illinois and California sub-classes. (*See Burke v. Clearview AI, Inc.*, 1:20-cv-3104-CM.) No federal claims were alleged. On April 15, 2020, the case was transferred to this district on consent of the parties.

On March 12, 2020, Plaintiff Broccolino filed a complaint in the Southern District of New York alleging violations of BIPA and claims for unjust enrichment, again on behalf of a putative Illinois class. (*See Broccolino v. Clearview AI, Inc.*, 1:20-cv-2222-CM.) No federal claims were alleged.

5

On April 15, 2020, Plaintiff McPherson filed a complaint in the Southern District of New York alleging violations of BIPA and claims for unjust enrichment on behalf of a putative nationwide class. (*See McPherson v. Clearview AI, Inc.*, 1:20-cv-3053-CM.)

On May 4, 2020, Plaintiff John filed a complaint in the Southern District of New York asserting claims under multiple states' laws, including the Illinois Biometric Privacy Act, California Business and Professional Code § 17200, the California Common Law Right of Privacy, and the California Constitutional Right to Privacy, as well as common law claims for intentional interference with contractual relations, and unjust enrichment. These claims were asserted on behalf of a putative nationwide class and three state sub-classes – Illinois, California and New York. (*See John v. Clearview AI, Inc.*, No. 1:20-cv-3481-CM.)

All these actions are brought against New York-based defendants. None other than Mutnick's alleges any violation of federal law.

No party (including Mutnick) has applied to the Judicial Panel on Multi-District Litigation for an order of consolidation and transfer to a single district for pre-trial purposes. It has been left to the judges involved – which, at the moment, are Judge Coleman of Illinois Northern and me – to figure out where these overlapping lawsuits should be litigated.

### III.    Mutnick's Motion for Preliminary Injunction

On April 8, 2020 – three months after filing his lawsuit, and well after other actions had been filed in other districts – Mutnick filed a motion for a preliminary injunction against the Clearview Defendants in the Northern District of Illinois. (*Mutnick*, Dkt. Nos. 31-32, 39.) The motion seeks to preliminarily enjoin the Clearview Defendants from: (1) violating Illinois's BIPA; and (2) possessing the biometric identifiers and information of Illinois residents without taking measures to ensure the security of that information. (Dkt. No. 23, Ex. 1, Preliminary

6

Injunction Memorandum of Law.)  At the time of this writing, the motion has been fully briefed but remains unresolved.

### IV. Mutnick's Motion to Intervene

On April 21, 2020, Mutnick filed the instant motion to intervene so that he could file a motion to (a) dismiss the various New York Actions without prejudice; or (b) stay them until the Illinois Action is resolved; or (c) transfer them to the Northern District of Illinois, arguing that his first-filed case supports dismissal of the New York Actions. (Dkt. No. 22.) He asserts he may intervene either as a matter of right under Rule 24(a)(2), or with the court's permission under Rule 24(b).

## DISCUSSION

### I. Standard of Review

Before he can seek the dismissal, transfer, or stay of the New York Cases, Mutnick must prevail on his motion to intervene. *See U.S. ex. rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) ("intervention is the requisite method for a nonparty to become a party to a lawsuit.").

A party may intervene as of right under Federal Rule of Civil Procedure Rule 24(a)(2) if it: "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interests; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).

"Failure to meet any one of these four requirements is grounds for denial." *Freydl v. Meringolo*, No. 09 Civ. 7196, 2012 WL 1883349, at *1 (S.D.N.Y. May 22, 2012) (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006)).

Alternatively, Federal Rule of Civil Procedure 24(b) grants a court discretion to, "On timely motion," "permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In deciding whether to permit intervention under Rule 24(b), courts generally consider the same factors that are relevant as of right under Rule 24(a)(2). *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) (citing *R Best Produce, Inc. v. Shulman–Rabin Marketing Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). However, "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(3)). *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018).

## II.     Intervenor's Motion to Intervene Pursuant to Rule 24(a) is DENIED.

Mutnick seeks to intervene in the New York Cases under Fed. R. Civ. P. 24(a)(2), as of right, and under Rule 24(b), under the permissive joinder standards, in order to either dismiss, stay, or transfer the New York Cases to the Northern District of Illinois.

Here, intervention is not justified on either mandatory or permissive grounds. First, Mutnick has not demonstrated that he has a sufficiently direct interest in the filed actions to justify intervention. Second, Mutnick has not demonstrated that his hypothetical interest in the actions would be impaired in the absence of intervention. Finally, Mutnick has not shown that his personal interest in his claims (as opposed to his and his lawyer's interest in controlling the

8

litigation against Clearview) would not be adequately represented by Plaintiffs in the other actions.

    A. *Mutnick articulates no legally cognizable interest justifying intervention.*

In order to intervene, a movant must have an interest that is "direct, substantial, and legally protectable." *See Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990))). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Travis v. Navient Corp.*, 284 F. Supp. 3d 335, 342 (E.D.N.Y. 2018).

Mutnick summarily claims that he "satisfies this requirement" because his case and the Southern District cases "are competing class actions, with overlapping classes, claims, parties and legal and factual issues" and that "the Northern District of Illinois will be called upon to decide identical legal issues." (David Mutnick's Memorandum of Law in Support of Motion to Intervene and to Dismiss or, Alternatively, to Stay Cases or Transfer Venue ("Mem") Dkt. No. 23, at 11.) To Mutnick, this is sufficient to assert intervention as of right because he "has an interest in the proper application of BIPA and in protecting the class from procedural infighting that adversely impacts Class Members' substantive rights." (David Mutnick Reply Memorandum ("Reply Mem.") Dkt. No. 41, at 2.)

The "property or transaction" that is the "subject of" these various lawsuits is a violation of one of several state laws protecting biometric information. Mutnick has no cognizable interest in any other person's claims under BIPA, or under any other state's biometric protection law. The only such claim in which Mutnick has any interest is his own personal claim, which arises under the law of the state of Illinois.  He has not the slightest interest in the claims that other

9

plaintiffs in this Court – namely, the plaintiffs in the *Burke, Roberson* and *John* lawsuits – are asserting under the laws of Virginia and California; indeed, he arguably lacks standing to pursue those claims. And at this moment, he has no interest in the claim of any other Illinois plaintiff, either.

The interest that Mutnick is really seeking to protect is an interest in controlling the fate of, and the fees to be earned in, several class actions that would, were they all in the same court, be consolidated and proceed under the leadership of one class representative's lawyer (I am under no illusion that these cases are anything other than attorney-driven class actions). He is using intervention as a vehicle to fight for control of what he anticipates will be a hotly contested lawsuit that will test the limits of a new and untried body of law – and assuming all of these cases end up in a single district (they may or may not), his lawyer is fighting for the right to be lead counsel.

But at the moment, no class has been certified anywhere, so Mutnick has no right to control the litigation and disposition of any claim other than his own. Prior to the certification of a class and the appointment of class counsel, Mutnick's (and his lawyer's) interest in being in control of the Clearview AI lawsuits is too attenuated to justify intervention as of right.

*Travis v. Navient Corp.*, 284 F. Supp. 3d 335 (E.D.N.Y. 2018) is instructive. In *Travis*, the proposed intervenors moved to intervene to dismiss, stay, or transfer a putative class action alleging "the same factual allegations," with the "same Delaware and New York state law claims," against the same defendants. *Travis*, 284 F. Supp. 3d at 341-42. The court nonetheless found that the intervenors' interests were "too speculative to warrant intervention" because "no class has been certified in the instant action." *Id*. at 343; *see also Rudolph v. Hudsons Bay Co.*, No. 18-cv-8472, 2019 WL 1416986, at *3-4 (S.D.N.Y. Mar. 29, 2019) (denying intervention to

10

stay or transfer a pending action because no class had been certified and noting that intervenors could opt out of any settlement); *Mejia v. Time Warner Cable Inc.*, No. 15-CV-6445, 2017 WL 3278926, at *18 (S.D.N.Y. Aug. 1, 2017) ("Here, intervention is not justified on either mandatory or permissive grounds. At this early stage of litigation, prior to the certification of a class, any interest the [proposed intervenors] claim is too remote to justify intervention.").

Accordingly, any interest Mutnick might have in protecting "his" putative class is too speculative to warrant intervention as of right. *Travis*, 284 F. Supp. 3d at 342-43; *Mejia*, 2017 WL 3278926, at *18 (finding proposed intervenors' interest "too remote to justify intervention" prior to class certification); *Townes v. Trans Union, LLC*, No. 04–1488, 2007 WL 2457484, at *2 (D. Del. Aug. 30, 2007) ("the Court finds the interest asserted by the [intervenors] to be speculative at this juncture" because "A class has not been certified."); *Glover v. Ferrero USA, Inc.*, No. 11–1086, 2011 WL 5007805, at *3 (D.N.J. Oct. 20, 2011) ("Proposed Intervenors' purported interests are too speculative, i.e., their interests cannot be impaired by this litigation because a class has not yet been certified in the California action, thus, Proposed Intervenors are merely seeking to intervene for the purpose of preventing any potential adverse rulings which may occur and may bind a class of consumers which Proposed Intervenors may or may not represent."). Unless and until (1) a class is certified; (2) Mutnick is found to be an appropriate class representative, and (3) his counsel are deemed appropriate class counsel, the only legally cognizable interest he has is in his own claim. That claim is not pending in the Southern District of New York (all the actions that are here, like Mutnick's in Illinois, being merely putative class actions, not certified class actions), he has no right to intervene in any of the actions pending here – even if all the actions in this district were identical to his.

But they are not.

11

Mutnick's motion hinges on his contention that the classes are overlapping and that these cases are competing class actions. (Mem. at 11.) However, while Mutnick's action overlaps to some extent with the New York Actions, it is not identical to them.

Mutnick asserts Illinois state-law claims on behalf of an Illinois class only. To that extent, his suit is substantially similar to *Broccolino*. However, Mutnick does not assert claims under any state's law other than Illinois. The *Burke*, *Roberson* and *John* cases assert claims under the laws of other states, notably California and Virginia.

Furthermore, Mutnick alone asserts federal constitutional claims in his complaint. He alleges that Clearview is a state actor (by virtue of the sale of its database to various state agencies and police departments) and that its actions violate his and his Illinois and nationwide class' rights under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments, as well as the Contract Clause of the U.S. Constitution. (*See* Dkt. No. 24, Drury Decl. ¶ 5 (stating that Mutnick intends to call witnesses from the Chicago Police Department and the Illinois Secretary of State's Office to testify regarding their use of Clearview's database).) Putting aside the precarity of Mutnick's premise as a matter of law – a proposition that will no doubt be tested on a motion to dismiss – no such claim is asserted in any of the New York cases. So there is no danger of inconsistent rulings on Mutnick's federal claims – assuming he eventually gets to pursue the federal claim on the merits.

In sum, the six New York cases and Mutnick's case, while all premised on the same underlying facts, raise different legal issues, have partially non-overlapping class definitions, and may require different discovery. All this undercuts Mutnick's claimed interest in seeing that they are all resolved in the same manner. *See In re Time Warner Cable, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 2016 WL 5846036, at *1 (J.P.M.L. Oct 3, 2016).

B. *Mutnick's alleged interest would not be impaired of impeded without intervention.*

Even if Mutnick's concern about "the proper application of BIPA and in protecting the class from procedural infighting that adversely impacts Class Members' substantive rights" gave rise to some legally protectable interest, Mutnick has not explained how that interest would be impaired or impeded without intervention – a necessary showing under Rule 24(a).

The mere fact that this Court and the Northern District of Illinois would be confronted with identical issues of Illinois law does not impair or impede Mutnick's rights. Identical issues of law arise in pending cases all the time. Sometimes they give rise to conflicting interpretations of law (indeed, conflicting interpretations of law among Circuit courts is how most cases get to the Supreme Court). And all litigants have an interest in the proper application of the law to their claims. Mutnick does not have any interest in having the judge of his choice decide those issues of law he raises, and he has not suggested that this Court is not up to the task of getting the law right.

*Travis* rejected the argument that "the risk of conflicting rulings at this stage in the litigation — prior to class certification — is []sufficient to merit intervention under Rule 24(a)." *Id*. at 344.  As *Travis* explained, "if the Court were to certify a class in this action that includes proposed intervenors and their putative class, their rights would be deemed protected, and not impaired," whereas, "if the Court were to decline to certify a class in this action, proposed intervenors' rights would not be impaired because … they would still be able to litigate their claims in the [proposed intervenors'] action." *Id*. at 344-345.

Mutnick is and always will be the master of the one thing in which he inarguably has a legal interest at this moment: his own claim. If a class of which he would otherwise be a member should be certified in an action not controlled by him, he is perfectly free to opt out and pursue

13

his claim on his own in the court of his choice. Therefore, intervention is not needed for him to protect his interest in the "property or transaction that is the subject matter of" his own lawsuit – which is his personal claims under BIPA and Section 1983, not being lead class plaintiff.

C. *Mutnick has not demonstrated that his interests would not be adequately represented.*

Finally, to intervene as of right under Rule 24(a), the proposed intervenor must show that his interests are not being adequately protected in the lawsuits in which he seeks to intervene.

Mutnick asserts that there is an identity of interests among the parties to all these lawsuits. If so, then there exists a presumption that his interest will be adequately represented in the New York Actions. (Mem. at 12-13; *see also Travis*, 284 F. Supp. 3d at 346.), The question, then, is whether Mutnick has overcome that presumption. The answer is no.

 In lieu of "a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action," the Second Circuit has offered general guidelines. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 180 (2d Cir. 2001). "Although perhaps not an exhaustive list, we generally agree ... that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Id*.

Mutnick admits that there is congruity of interest but asserts that there is circumstantial evidence of collusion, because the parties agreed to transfer the California case to the Southern District of New York. However, the fact that other plaintiffs' class action lawyers have elected to avoid frolic-and-detour litigation over personal jurisdiction and venue by suing Clearview and its principals in a place where they inarguably can be sued does not evidence collusion; it is more suggestive of a strategy directed toward avoiding litigation over collateral issues and getting straight to the merits.

By all indications, New York is the primary locus of the disputes. Schwartz and Ton-That, the company's principles and insureds, both reside in New York. (Plaintiffs' Opposition to David Mutnick's Motion to Intervene ("Pl. Opp.") Dkt. No. 27, at 3.) Clearview has its headquarters and principal place of business in New York (*Id*.); the "majority" of Clearview's employees "work in New York" (*Id*.); the "servers hosting the data necessary for Clearview's business are located in New York" (*Id*.); and the "images collected by Clearview were accessible to Clearview from its place of business in New York." (*Id*.) Accordingly, as the Clearview Defendants concede, New York "unquestionably has personal jurisdiction over all three Clearview Defendants." (*Id*.)

Mutnick has not established that he is entitled to intervention as of right. Therefore, his motion to intervene pursuant to Rule 24(a) is denied.

### III.     Mutnick's Motion for Permissive Intervention is DENIED.

A court may permit a party to intervene if he has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b). Mutnick's action qualifies for permissive intervention under that standard.

In exercising its discretion to decide a motion for permissive intervention, the court's primary consideration is whether intervention will unduly delay or prejudice the adjudication of the rights of the parties whose lawsuits are being "invaded." *See U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) ("The principal guide in deciding whether to grant permissive intervention" is prejudice to existing parties.).

Additionally, in determining whether to permit intervention under Rule 24(b), courts consider "the nature and extent of the intervenors' interests, whether their interests are adequately represented by the other parties, and whether parties seeking intervention will

significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978) The Second Circuit has recognized "the broad discretion of the district court when considering permissive intervention," and "A denial of permissive intervention has virtually never been reversed." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005)

Though Mutnick contests that allowing him to intervene would prejudice Plaintiffs, the Court, in its discretion, finds that permissive intervention for the sole purpose of dismissing, staying, or transferring the actions would not further the ultimate resolution of these lawsuits. There is little question that Plaintiffs who have either sued or consented to transfer to New York would be prejudiced if Mutnick is granted permission to intervene, since he does not seek to litigate here and only hopes to have the New York Actions dismissed, stayed, or transferred to the Northern District of Illinois -- where the Clearview Defendants have already filed a motion to dismiss or transfer for lack of personal jurisdiction.

Courts have previously recognized that intervention for the sole cause of dismissing, staying, or transferring an action – the very action sought here – is prejudicial to the original parties' right to proceed before the court of their choosing. *See, e.g.*, *Travis*, 284 F. Supp. 3d at 346-47 (finding prejudice to the original parties when proposed intervenors "do not seek to intervene to participate in this case" but only to "dismiss, stay, or transfer this action,' which "would prejudice the rights of [plaintiff] and [defendants] given that they wish to proceed before this Court."); *Glover*, 2011 WL 5007805, at *7 ("the Proposed Intervenors' stated interest in only having this action dismissed or transferred ... will clearly prejudice the rights of the existing parties in this action, [and] the Court declines to permit the Proposed Intervenors to intervene.").

Though Mutnick asserts that Illinois plaintiffs cannot be prejudiced by being required to litigate in their home state, the hypothetical "convenience" of the forum does not end the inquiry. Not all of the New York plaintiffs are Illinois residents. Furthermore, the New York Plaintiffs' chosen forum is one in which jurisdiction over both Clearview and the individual defendants, Schwartz and Ton-That,[2] is uncontested. And if it turns out that Clearview is not a state actor, pendent jurisdiction in Illinois over the New York Defendants (on which Mutnick relies) would be in jeopardy.

Mutnick asserts that this uncertainty could be addressed by staying the New York Actions while these things play out in Chicago. But entry of a stay so that collateral issues not addressed to the merits – issues that will never be raised in New York – can be litigated in Illinois benefits no one, except, arguably, Mutnick's counsel.

One more factor counsels against permissive intervention in this case. I recognize that, absent intervention, the court need not – indeed, cannot – reach the merits of his motion to dismiss, transfer, or stay the New York cases. *See U.S. ex. rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 933 (2009) ("intervention is the requisite method for a nonparty to become a party to a lawsuit."). However, it bears noting that this court would almost certainly not have granted such a motion. While I initially observed that there was some appeal to litigating the claims of Illinois plaintiffs under an Illinois statute in Illinois (Dkt. No. 21), things have changed considerably since I made that statement. There are now six cases pending in this court – two of them having been transferred here from other courts, one after a judge carefully considered whether New

---

[2] Both Schwartz and Ton-That have challenged the Northern District of Illinois's jurisdiction over them and have submitted declarations stating that they "do not reside, pay taxes, or own any property in Illinois," and "have never traveled to Illinois to conduct Clearview business." (Ex. 6 ¶¶ 3-4; Ex. 7 ¶¶ 3-4.) That neither pays taxes or owns property in Illinois nor have Illinois bank accounts or driver's licenses. (Ex. 6 ¶ 3; Ex. 7 ¶ 3.) Neither have ever traveled to Illinois to conduct business for Clearview. (Ex. 6 ¶ 4; Ex. 7 ¶ 4.) Clearview has no employees in Illinois, is not registered to do business in Illinois, and has no offices, servers, or other facilities in Illinois. (Ex. 6 ¶10.)

York was an appropriate forum. Claims are being asserted under the laws of various states, not just Illinois. New York is the one place where no jurisdictional issues can possibly be raised. And aside from the fact that Mutnick's case was the first filed (by a matter of days), much of what a court would consider on a motion brought under 28 U.S.C. § 1404(a) counsels against transfer. (*See, e.g.*, *supra*, p. 15). The one factor that might augur for transfer of the cases that raise issues under Illinois law is the inarguable fact that an Illinois judge is more familiar with Illinois statutory law than is a New York judge. But it long ago became *de rigeur* for a single court to oversee and coordinate litigation that raises identical factual issues under the laws of several, even many states – either by assignment from the Judicial Panel on Multi-District Litigation, or by the filings of multiple actions in a single court (pay-to-delay generic drug patent cases brought under the laws of many different states is an example that comes to mind). There would be little point to granting Mutnick's motion to intervene if his reason for intervening was (as it likely would be) futile.

Mutnick's motion for leave to intervene permissively is, therefore, DENIED.

## CONCLUSION

This constitutes the decision and order of the Court. It is a written opinion. The Clerk of the Court is directed to remove the motion at Dkt. No. 22 from the Court's list of pending motions.

Dated: May 29, 2020

_____
Chief Judge

BY ECF TO ALL COUNSEL